UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------- X
:
LETICIA REMAURO, JANE FRANGOS, WILLIAM : 21-CV-4553 (ARR) (TAM)
PEPITONE, ANTHONY HERBERT, CHRIS ALTERI, :
COLLEEN MAHONEY, ANTHONY YORIO, TINA :
FORTE, ROSEMARIE SALADINO, and SUZANNE :
NEWMAN, : **OPINION & ORDER**
:
          *Plaintiffs*, :
:
   -against- :
X
MAYOR ERIC ADAMS, in his official capacity, and THE
CITY OF NEW YORK,

          *Defendants*.

-----------------------------------------------------------------------

ROSS, United States District Judge:

Plaintiffs Leticia Remauro, Jane Frangos, William Pepitone, Anthony Herbert, Chris Alteri, Colleen Mahoney, Anthony Yorio, Tina Forte, Rosemarie Saladino, and Suzanne Newman bring this action against defendants Mayor Eric Adams and the City of New York. Plaintiffs challenge the constitutionality of the City's "Key to NYC" program, alleging that it violates both the Supremacy Clause and their individual rights under the First, Fourth, Fifth, and Fourteenth Amendments. Defendants move to dismiss the complaint. For the reasons set forth below, I grant defendants' motion.

## BACKGROUND[1]

On August 16, 2021, in response to the ongoing COVID-19 pandemic, Bill de Blasio, who

---

[1] For the purposes of deciding this motion, I accept as true the facts alleged in the First Amended Complaint. *See Lundy v. Cath. Health Sys. of Long Island Inc.*, 711 F.3d 106, 113 (2d Cir. 2013). I draw additional facts from the emergency executive orders that established and have set the terms of the Key to NYC program. *See Elite Union Installations v. Nat'l Fire Ins. Co.*, 559 F. Supp. 3d

1

was then Mayor of New York City, issued Emergency Executive Order Number 225 ("EEO 225"). First Am. Compl. ¶ 43, ECF No. 9; *see also* EEO 225 (Aug. 16, 2021). This Order instituted a program known as "Key to NYC," which was meant to help reduce the transmission of COVID-19 and incentivize people to receive vaccinations against the virus. EEO 225.[2] In pursuit of those goals, Key to NYC prohibited most people from entering indoor entertainment, recreation, food, and fitness facilities without displaying proof that they had received an approved COVID-19 vaccine.[3] *Id.* §§ 1, 2, 5. Entities that operated facilities covered by Key to NYC were required to check the vaccination status of individuals who entered their facilities, including patrons, contractors, and employees. *Id.* § 1. Any entity or individual who violated these requirements was "subject to a fine, penalty and forfeiture of not less than $1,000"; an entity or individual who committed a second violation within a year of the first was subject to a fine of no less than $2,000, while each further violation within the same year yielded a fine of no less than $5,000. *Id.* § 9.

Several of the main provisions of Key to NYC expired on March 7, 2022, pursuant to Emergency Executive Order Number 50 ("EEO 50"). *See* EEO 50 § 2(a) (Mar. 4, 2022). Under EEO 50, which remains in place, entities covered by EEO 225 are no longer required to check the

---

211, 219 (S.D.N.Y. 2021) (taking judicial notice of New York State executive orders, as matters of public record, in deciding a motion to dismiss); *Michael Cetta, Inc. v. Admiral Indem. Co.*, 506 F. Supp. 3d 168, 173 (S.D.N.Y. 2020) (same).

[2] In the months following August 2021, EEO 225 was superseded, amended, and extended by subsequent emergency executive orders. Though the subsequent orders differed in some ways from EEO 225, the basic provisions at issue in this case—the requirement that most people show proof of vaccination when entering indoor establishments and the mandate that businesses enforce this requirement—remained largely consistent. *Compare, e.g.*, Emergency Exec. Order No. 317 (Dec. 15, 2021), *with* EEO 225. When discussing specific provisions of Key to NYC in this opinion, I refer to EEO 225.

[3] Per EEO 225, "'Proof of vaccination' means proof of receipt of at least one dose of a COVID-19 vaccine authorized for emergency use or licensed for use by the U.S. Food and Drug Administration or authorized by the World Health Organization." EEO 225 § 5(h).

2

vaccination status of patrons and other visitors to their facilities. *Id*. They must, however, "continue to require that . . . covered worker[s]," including contractors, employers, and employees who work "in person in the presence of another worker or a member of the public at a workplace in New York City," "provide proof of vaccination," except in cases where a worker "has received a reasonable accommodation." *Id.* § 3(a), (d)(3).

Plaintiffs in this case are residents of New York City who take issue with the Key to NYC program. Leticia Remauro owns and operates "a public relations and marketing company" and has clients who own restaurants and bars. First. Am. Compl. ¶ 30. Ms. Remauro reports that she "experienced a drastic decline [in business] due to" Key to NYC. *Id.* Ms. Remauro also objects to receiving a COVID-19 vaccine and to "disclos[ing] any sensitive medical information to anyone outside of her healthcare provider or insurance company." *Id.* Suzanne Newman owns two fitness centers in New York City and saw "a precipitous loss of business from canceled memberships based on" Key to NYC. *Id.* ¶ 37. Ms. Newman has also "had to divert employees from doing other regularly scheduled tasks to checking for vaccination status" and has faced "a loss of employees due to the vaccination status [of] her employees." *Id.* Rosemarie Saladino owns a dining establishment that was "directly impacted by" Key to NYC. *Id.* ¶ 36. She "received numerous reservation cancelations for indoor dining and events based on" the program and was "faced with having to terminate employees who do not furnish proof of vaccination." *Id*. In addition, Ms. Saladino "objects" to having to inspect customers' vaccine information and to providing this information herself "to gain access to places of public accommodation." *Id.*

Tina Forte "owns a beverage distribution company and objects to having to furnish proof of vaccination in order to visit her customers or conduct basic transactions in the City of New York." *Id.* ¶ 35. "As a result," she explains, her business has "suffer[ed] detrimental financial

effects." *Id.* Jane Frangos, William Pepitone, and Anthony Herbert sue on the basis that they "object[]" to having to provide their vaccination information to entities covered by the Key to NYC program. *Id.* ¶¶ 31–33. Ms. Frangos adds that, while the original version Key to NYC was in effect, she "w[as] unable to enjoy life in New York City . . . because [she] w[ould] not furnish her vaccine status to anyone outside of her healthcare provider or insurance plan." *Id.* ¶ 31. Mr. Pepitone, meanwhile, asserts that he was "placed at a disadvantage" in his campaign for mayor because "he [was] barred from entering establishments in the City of New York in order to attend meetings and events." *Id.* ¶ 32. Finally, Chris Alteri, Collen Mahoney, and Anthony Yorio all "object to having to having to disclose their vaccination status to anyone who is not a licensed medical professional." *Id.* ¶ 34. They claim "[t]hey [we]re precluded from business opportunities and job opportunities because of" Key to NYC. *Id.*

On August 13, 2021, three days before EEO 225 took effect, plaintiffs Remauro and Frangos filed suit against then-Mayor de Blasio in his official capacity. *See* Compl., ECF No. 1. In September 2021, plaintiffs filed an amended complaint, adding New York City as a defendant and Mr. Peptitone, Mr. Herbert, Mr. Alteri, Ms. Mahoney, Mr. Yorio, Ms. Forte, Ms. Saladino, and Ms. Newman as plaintiffs. *See* First Am. Compl. ¶¶ 32–37, 39. Pursuant to Federal Rule of Civil Procedure 25(d), Mayor Adams, the current mayor of New York City, is substituted as a party for Mr. de Blasio. *See* Fed. R. Civ. P. 25(d) (providing that when a "public officer who is a party in an official capacity . . . ceases to hold office while the action is pending[,] [t]he officer's successor is automatically substituted as a party"); *see also Tanvir v. Tanzin*, 894 F.3d 449, 459 n.7 (2d Cir. 2018) ("[S]uits against officers in their official capacity, which generally seek injunctive relief, are directed at the office itself. As a result, if the defendant in an official capacity suit leaves office, the successor to the office replaces the originally named defendant." (citations

omitted)).[4] The amended complaint alleges that Key to NYC violates the Supremacy Clause and plaintiffs' First, Fourth, Fifth, and Fourteenth Amendment rights and seeks injunctive and declaratory relief under 42 U.S.C. § 1983. First Am. Compl. ¶¶ 57–100. Defendants have moved to dismiss the suit for mootness, lack of standing, and failure to state a claim. *See* Mem. in Support re Mot. to Dismiss ("Mot. to Dismiss"), ECF No. 19; Resp. to Order to Show Cause, ECF No. 24. Plaintiffs oppose the motion. *See* Mem. in Opp. re Mot. to Dismiss ("Opp. re Mot. to Dismiss"), ECF No. 20; Mem. in Opp. re Order to Show Cause, ECF No. 23.

## DISCUSSION

### I. The Claims by Ms. Frangos, Mr. Pepitone, Mr. Herbert, Mr. Alteri, Ms. Mahoney, and Mr. Yorio Are Moot, as Is the First Amendment Claim.

After the original version of Key to NYC expired in March 2022, defendants filed a letter arguing that the program's expiration renders several of plaintiffs' claim moot. *See* Resp. to Order to Show Cause. "A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (internal citation omitted). "The hallmark of a moot case or controversy is that the relief sought can no longer be given or is no longer needed." *Martin-Trigona v. Shiff*, 702 F.2d 380, 386 (2d Cir. 1983). Importantly, a case must remain "live" through the pendency of the litigation: "If an intervening circumstance deprives the plaintiff of a personal stake in the outcome of the lawsuit, at any point

---

[4] Though the caption of the First Amended Complaint indicates that plaintiffs sue Mr. de Blasio only in his official capacity, the body of the complaint asserts that Mr. de Blasio "is sued individually and in his official capacity." First Am. Compl. ¶ 38. To the extent plaintiffs sue him individually, their claims are dismissed. As Mr. de Blasio is no longer a public official, he cannot provide the injunctive or declaratory relief plaintiffs seek. *Cf. Torres v. UConn Health*, No. 17-CV-325 (SRU), 2018 WL 4039322, at *3 (D. Conn. Aug. 23, 2018) (dismissing claims against a defendant who had retired from her official position because she could "no longer afford any injunctive relief to [the plaintiff] should he prevail").

5

during litigation, the action can no longer proceed and must be dismissed as moot." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 71–72 (2013) (internal citation and quotation marks omitted).

Here, the relief plaintiffs seek is an order enjoining defendants from enforcing Key to NYC. *See* First Am. Compl. p. 22–23.[5] When plaintiffs filed suit, Key to NYC included a provision requiring covered entities to check the vaccination status of patrons who entered their facilities, and many of plaintiffs' claims target this rule specifically, alleging that it violated their constitutional rights as patrons or would-be patrons. Now, however, the rule is no longer in effect—though a modified version of Key to NYC remains, it does not apply to patrons. "Put simply, [I] cannot enjoin what no longer exists." *Exxon Mobil Corp. v. Healey*, 28 F.4th 383, 393 (2d Cir. 2022). Because the patron-specific rule has expired, the claims plaintiffs bring in their capacity as patrons are moot. *Cf. Srabyan v. New York*, 20-CV-3137 (NGG), 2022 WL 866851, at *2 (E.D.N.Y. Mar. 23, 2022) (collecting Second Circuit cases holding that "similar challenges to previous COVID-19-related Executive Orders were moot").

Resisting this conclusion, plaintiffs raise three main arguments.[6] First, they contend that

---

[5] Plaintiffs also request declaratory relief, but this request does not alter my mootness finding. *See Exxon Mobil Corp. v. Healey*, 28 F.4th 383, 394–95 (2d Cir. 2022) (explaining that "a request for a declaratory judgment as to a past [constitutional] violation cannot itself establish a case or controversy to avoid mootness" (citing *Green v. Mansour*, 474 U.S. 64, 73–74 (1985))); *Nat'l Res. Def. Council v. Zinke*, 18-CV-6903 (AJN), 2020 WL 5766323, at *10 (S.D.N.Y. Sept. 28, 2020) ("[I]f a case is moot, a request for declaratory judgment will not resuscitate the lawsuit, unless an exception to the mootness doctrine applies." (quoting *Ctr. for Biological Diversity v. Tidwell*, 239 F. Supp. 3d 213, 226 (D.D.C. 2017))).

[6] It is worth noting that the Second Circuit appears to have rejected the first two of these arguments when raised by another set of plaintiffs who sought to enjoin Key to NYC. *See Dixon v. de Blasio*, 21-CV-2666, 2022 WL 961191, at *1 (2d Cir. Mar. 28, 2022) (dismissing the plaintiffs' appeal of the district court's preliminary injunction as moot); Br. for Plaintiffs-Appellants at 5–7, *Dixon*, 2022 WL 961191 (raising both arguments).

their claims fall under the exception to mootness for voluntary cessation of unlawful conduct because defendants could still reinstate the original version of Key to NYC. Mem. in Opp. re Order to Show Cause 2–3; *see also Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) ("It is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." (internal citation and quotation marks omitted)). This exception does not apply, however, when "the defendant can demonstrate that (1) there is no reasonable expectation that the alleged violation will recur and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Dark Storm Indus. LLC v. Hochul*, 20-CV-2725, 2021 WL 4538640, at *1 (2d Cir. Oct. 5, 2021) (quoting *Mhany Mgmt., Inc. v. Cnty. of Nassau*, 819 F.3d 581, 603 (2d Cir. 2016)). On the first prong, "[a] defendant satisfies its burden where it shows that the possibility of recurrence is merely 'speculative.'" *Id.* (citing *Lillbask ex rel. Mauclaire v. Conn. Dep't of Educ.*, 397 F.3d 77, 88 (2d Cir. 2005)). Defendants have done so here, as plaintiffs' claim that the patron-specific rule could be reinstated "stem[s] only from the uncertainty inherent in the pandemic and the [mayor's] general authority to impose restrictions in emergencies," *Denver Bible Church v. Polis*, 20-CV-1391, 2022 WL 200661, at *6 (10th Cir. Jan. 24, 2022). I therefore reject plaintiffs' invitation to apply the voluntary cessation exception based on the mere possibility that defendants' challenged conduct might recur. *See Dark Storm*, 2021 WL 4538640, at *1 ("[P]articularly in view of the mitigation measures that have become available to combat the spread of COVID-19, and the providential infrequency of pandemics, the risk that restrictions on firearm retailers will recur is only speculative." (internal citation and quotation marks omitted); *Bos. Bit Labs, Inc. v. Baker*, 11 F.4th 3, 9–12 (1st Cir. 2021) (coming to the same conclusion and observing "[t]hat the Governor has the power to issue executive orders [and reinstate the challenged orders]

7

cannot itself be enough to skirt mootness, because then no suit against the government would ever be moot"); *Denver Bible Church*, 2022 WL 200661, at *6 (coming to the same conclusion); *Hawse v. Page*, 7 F.4th 685, 692–94 (8th Cir. 2021) (coming to a similar conclusion).

Plaintiffs' next argument—that the patron-specific claims are not moot because they are capable of repetition but evade review—fails for a similar reason. "A dispute qualifies for that exception only if (1) the challenged action is in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subjected to the same action again." *United States v. Sanchez-Gomez*, 138 S. Ct. 1532, 1540 (2018) (quotation marks and citation omitted); *see also Exxon Mobil*, 28 F.4th at 395–96 (explaining that "[t]his facet of the mootness doctrine is applicable only in exceptional situations" (quotation marks, alteration, and citation omitted)). As with the voluntary cessation exception, the "reasonable expectation of repetition must be more than a mere physical or theoretical possibility." *Lillbask*, 397 F.3d at 86 (quoting *Murphy v. Hunt*, 455 U.S. 478, 482 (1982); *see also, e.g.*, *Courshon v. Berkett*, 16 F. App'x 57, 63 (2d Cir. 2001) (declining to apply the exception because the plaintiff's argument was "based solely on mere speculation that the parties will be involved in a dispute over the same issue"). Here, though, plaintiffs claim that they expect to be subject to the patron-specific requirement again simply because "there is absolutely no legal obstacle preventing an immediate resumption through the use of an administrative declaration." Mem. in Opp. re Order to Show Cause 2. This speculative assertion of what defendants *could* do is not enough to satisfy the capable of repetition exception to mootness. *See Reale v. Lamont*, 20-CV-3707, 2022 WL 175489, at *1 (2d Cir. Jan. 20, 2022) (declining to apply the exception where the plaintiff asserted that rescinded COVID-19 restrictions could come back into effect but did not show that they had returned); *Denver Bible Church*, 2022 WL 200661, at

\*6 n.11 ("[P]laintiffs only speculate that they will again be subject to the challenged COVID-19 restrictions; they therefore have not met their burden to demonstrate a reasonable expectation that they will be subject to the same COVID-19 restrictions in the future." (quotation marks and citation omitted)); *Johnson v. Governor of N.J.*, 21-CV-1795, 2022 WL 767035, at \*3 (3d Cir. Mar. 14, 2022) (holding that the plaintiffs had not met their burden where they "merely argued that the Governor still claims the power to issue orders of the sort before" the court (quotation marks and citation omitted)); *Aviles v. de Blasio*, 20-CV-9829 (PGG), 2021 WL 796033, at \*16–17 (S.D.N.Y. Mar. 2, 2021) (dismissing the plaintiffs' case as moot where "it would be speculative . . . to find that Defendants will again close elementary and middle schools for in-person learning"), *appeal dismissed as moot sub nom.*, *Lisa v. de Blasio*, 21-CV-721, 2022 WL 1216298 (2d Cir. Apr. 21, 2022).

Finally, plaintiffs argue that their patron-based claims are not moot because Key to NYC has caused "enormous" "[f]inancial losses and other damages to restaurants and other covered entities." Mem. in Opp. re Order to Show Cause 5. But while plaintiffs may have suffered financial losses due to Key to NYC, their complaint requests only declaratory and injunctive relief and does not include a claim for damages. First. Am. Compl. pp. 22–23. Because I cannot "read a damages claim into" the complaint's prayer for relief, *Fox v. Bd. of Trs. of State Univ. of N.Y.*, 42 F.3d 135, 141–42 (2d Cir. 1994), plaintiffs' subsequent representations regarding financial losses do not alter my conclusion that I am no longer able to grant them relief. *See id.* (rejecting the plaintiffs' claim that their case was not moot because "there [wa]s absolutely no specific mention in the Complaint of . . . damages[,] [n]or can a request for damages be inferred from the language of the Complaint" (alterations, quotation marks, and citation omitted)); *see also Van Wie v. Pataki*, 267 F.3d 109, 115 & n.4 (2d Cir. 2001) (holding that the plaintiffs' claims were moot because the allegedly

9

unlawful conduct had ceased and the plaintiffs sought injunctive relief but not money damages); *cf. Ciaprazi v. Jacobson*, 719 F. App'x 86, 87 (2d Cir. 2018) ("A prisoner's release moots an action seeking injunctive relief against the prison, but not an action seeking damages." (citation omitted)).[7]

I therefore conclude that the claims based on plaintiffs' experiences as patrons or would-be patrons of entities covered by Key to NYC are moot. This means that all claims by Ms. Frangos, Mr. Pepitone, Mr. Herbert, Mr. Alteri, Ms. Mahoney, and Mr. Yorio—all of whose claims are based on their "objections" to providing proof of vaccination in order to enter a covered entity and none of whom allege that they have been subject to any restrictions as employers or workers—are dismissed.[8] I also dismiss the First Amendment claim as to all plaintiffs. The basis for this claim is that, under the original terms of Key to NYC, "a person seeking to attend a gathering of a political party at a restaurant" or "speak in favor of or against a certain party" at a club "will not be able to do so unless she is vaccinated and is willing to disclose this fact." First. Am. Compl. ¶¶ 69–70. Putting to the side the other standing issues and the dubious substantive merit of this claim, it is simply no longer the case that a person who seeks to attend a gathering or speak at a

---

[7] Another problem with plaintiffs' argument is that any financial losses covered entities may have experienced have no bearing on whether *patrons* of those entities have standing to bring their claims.

[8] Mr. Alteri, Ms. Mahoney, and Mr. Yario do allege that "[t]hey are precluded from business opportunities and job opportunities because of" Key to NYC. First Am. Compl. ¶ 34. But this vague statement still contains no assertion that plaintiffs have been affected as workers. In any event, the conclusory nature of these plaintiffs' alleged injuries means that they do not have standing to bring their claims. *See Baur v. Veneman*, 352 F.3d 625, 636–37 (2d Cir. 2003) ("While the standard for reviewing standing at the pleading stage is lenient, a plaintiff cannot rely solely on conclusory allegations of injury or ask the court to draw unwarranted inferences in order to find standing."); *Carlone v. Lamont*, 21-CV-871, 2021 WL 5049455, at *2 (2d Cir. Nov. 1, 2021) (holding that the plaintiff's allegation that "[a]s a consequence and result of [COVID restrictions], the [p]laintiff has suffered injuries to his business and his ability to make a living" was "too conclusory to support a finding of a concrete and particularized injury").

covered entity without providing proof of vaccination is unable to do so. As for the remaining plaintiffs—Ms. Remauro, Ms. Forte, Ms. Saladino, and Ms. Newman—all allege that they have been affected by Key to NYC as employers and business owners. They are therefore still subject to the revised version of Key to NYC, and their causes of action under the Fourth Amendment, the Fifth Amendment, the Fourteenth Amendment, and the Supremacy Clause remain viable.

## II. The Remaining Plaintiffs Do Not Have Standing for Fourth Amendment, Fourteenth Amendment, and Supremacy Clause Claims.

The remaining plaintiffs' claims can be divided into two categories. Their Fifth Amendment claim alleges that they have been harmed by Key to NYC because its requirements force them to take on expenses they would not otherwise have to, including the costs of assigning an employee to check people's vaccination status and of "[t]erminating valuable employees" who refuse to be vaccinated. *See* First Am. Compl. ¶¶ 79–85. In other words, this claim rests on the financial injuries plaintiffs have experienced as business owners. Plaintiffs' claims under the Fourth Amendment, the Fourteenth Amendment, and the Supremacy Clause, meanwhile, posit a more direct, personal theory of harm. At the root of these three claims is plaintiffs' position that they *themselves* should not have to receive COVID vaccines and/or show proof that they have received vaccines in order to conduct business in New York City. *See id.* ¶¶ 57–66, 74–78, 89–100. In requiring them to do so, plaintiffs contend, Key to NYC violates their "due process right to decline unwanted medical treatment," *id.* ¶ 60, "runs afoul of the [F]ourth [A]mendment protections against unreasonable searches and seizures," *id.* ¶ 75, and conflicts with federal law governing the approval and licensing of medical products, *id.* ¶¶ 91, 93–95. Defendants argue that plaintiffs lack standing for these three claims. Mot. to Dismiss 6–9. I agree.

To establish standing under Article III of the U.S. Constitution, plaintiffs "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of [defendants],

11

and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). An injury in fact "must be concrete and particularized," not "conjectural or hypothetical." *Carney v. Adams*, 141 S. Ct. 493, 498 (2020) (quotation marks and citation omitted). "[A] grievance that amounts to nothing more than an abstract and generalized harm to a citizen's interest in the proper application of the law does not count as an 'injury in fact.' And it consequently does not show standing." *Id.* (citation omitted); *see also Davis v. de Blasio*, 21-CV-4853 (KAM), 2021 WL 4521878, at *2 (E.D.N.Y. Oct. 4, 2021) ("To have standing to bring a constitutional claim, a plaintiff must show that she was personally deprived of rights or privileges guaranteed by the United States Constitution." (citing, *inter alia*, *Collins v. W. Hartford Police Dep't*, 324 F. App'x 137, 139 (2d Cir. 2009))).

Here, to have standing for their Fourth Amendment, Fourteenth Amendment, and Supremacy Clause claims, the remaining plaintiffs must have been personally injured by Key to NYC's requirement that business owners who interact with the public retain proof they have been vaccinated—for example, by being asked to show proof of vaccination or by being fined for refusing to do so. *Cf. Bechade v. Baker*, 20-CV-11122 (RGS), 2020 WL 5665554, at *2–3 (D. Mass. Sept. 23, 2020) (concluding that a plaintiff challenging Massachusetts's mask mandate did not have standing because she had not alleged that she had "*personally* been forced to wear a mask or to require her employees to wear a mask on any occasion"). The complaint, however, contains no such allegations. Instead, plaintiffs claim only that they "object[]" to being vaccinated or to providing proof of vaccination. First. Am. Compl. ¶¶ 30, 35, 36.[9] Though I am sure plaintiffs are "deeply committed" to their belief that these requirements are unlawful, their objections do not

---

[9] Ms. Forte also alleges that, "[a]s a result" of her objection, "her business has and will continue to suffer detrimental financial effects." First Am. Compl. ¶ 35. But this allegation of injury is too conclusory to establish standing. *See supra* note 8.

show that they "suffer[ed] a personal and individual injury beyond [their] generalized grievance." *Carney*, 141 S. Ct. at 499 (citations and quotation marks omitted). Because plaintiffs have not established a concrete, particularized injury, they do not have standing to bring their claims. *See Carlone v. Lamont*, 21-CV-871, 2021 WL 5049455, at *2–3 (2d Cir. Nov. 1, 2021) (holding that a plaintiff who challenged Connecticut's mask mandate did not have standing simply by virtue of being "subject" to that mandate, since his "complaint d[id] not state that [he] ha[d] ever actually been required to wear a mask or ha[d] been subject to enforcement of the mask mandate"); *Davis*, 2021 WL 4521878, at *2 (finding that the plaintiff did not have standing to challenge New York City's mask mandate because, while she claimed the mandate was unconstitutional, she had not "allege[d] any facts to show that she ha[d] personally suffered a constitutional injury"); *Schiavo v. Carney*, 548 F. Supp. 3d 437, 441–43 (D. Del. 2021) (coming to a similar conclusion and collecting cases).

I dismiss plaintiffs' Fourth Amendment, Fourteenth Amendment, and Supremacy Clause claims.

### III.  The Remaining Plaintiffs Have Failed to State a Claim for Violation of the Takings Clause.

The remaining plaintiffs are left with one cause of action: their allegation that Key to NYC amounts to an unconstitutional taking, in violation of the Fifth Amendment. Defendants have moved to dismiss this claim under Federal Rule of Civil Procedure 12(b)(6). To survive defendants' motion, plaintiffs must state "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In deciding the motion, I accept all factual allegations as true and draw all reasonable inferences in plaintiffs' favor. *Lundy v. Cath. Health Sys. of Long Island Inc.*, 711 F.3d 106, 113 (2d Cir. 2013). I am not, however, "bound to accept as true a legal conclusion couched as a factual allegation." *Drimal v. Tai*, 786 F.3d 219, 223

13

(2d Cir. 2015) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"The law recognizes two species of takings: physical takings and regulatory takings." *Buffalo Tchrs Fed'n v. Tobe*, 464 F.3d 362, 374 (2d Cir. 2006). Plaintiffs here assert a regulatory taking claim, which occurs when the government "acts in a regulatory capacity" but "goes too far and in essence effects a taking" of a party's property. *Id.* (citation and quotation marks omitted). There are in turn two types of regulatory takings: categorical and non-categorical. *Sherman v. Town of Chester*, 752 F.3d 554, 564 (2d Cir. 2014). Though plaintiffs have not specified which theory they rely on, their complaint contains no allegation that Key to NYC has denied them all "productive or economically beneficial use of [their] land," as would be required for a categorical regulatory taking. *Id.* (quoting *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Regul. Plan. Agency*, 535 U.S. 302, 330 (2002)); *see Dixon v. de Blasio*, 21-CV-5090 (BMC), 2021 WL 4750187, at *11 (E.D.N.Y. Oct. 12, 2021) (finding that plaintiffs challenging Key to NYC had asserted a non-categorical regulatory taking claim, rather than a categorical regulatory taking claim, because "plaintiffs' motion state[d] that the City's actions [would] lead to lost productivity, decreased efficiency, and fines, not the total loss of their business"), *vacated on other grounds*, 21-CV-2666, 2022 WL 961191 (2d Cir. Mar. 28, 2022); *Lebanon Valley Auto Racing Corp. v. Cuomo*, 478 F. Supp. 3d 389, 400–01 (N.D.N.Y. 2020) (finding that the plaintiffs had not asserted a categorical taking claim where they did not allege that the defendants' actions "deprived them of their properties' entire value"). I therefore analyze their claim as a non-categorical taking, which results from "[a]nything less than a complete elimination of value, or a total loss." *Sherman*, 752 F.3d at 564 (quoting *Tahoe-Sierra*, 535 U.S. at 330). To determine whether a non-categorical regulatory taking has occurred, I weigh the three factors articulated in *Penn Central Transportation Co. v. New York City*, 438 U.S. 104 (1978): "(1) the economic impact of the regulation on the claimant;

14

(2) the extent to which the regulation has interfered with distinct investment-backed expectations; and (3) the character of the governmental action." *Buffalo Tchrs*, 464 F.3d at 375 (quoting *Connolly v. Pension Benefit Guar. Corp.*, 475 U.S. 211, 224–25 (1986)). Plaintiffs bear a "heavy burden" to establish this type of taking. *Id.*

Starting with the first factor, the only allegations plaintiffs make about the economic impact of the remaining Key to NYC provisions on *their* businesses (as opposed to on hypothetical businesses that "may" be affected by the program, *see* First Am. Compl. ¶¶ 80–81) are that they have "had to divert employees from doing other regularly scheduled tasks to checking for vaccination status" and that they are "facing a loss of employees due to [the employees'] vaccination status." First Am. Compl. ¶ 37. Though these allegations show that plaintiffs have experienced *some* economic impact from Key to NYC, I am not convinced that the impact is significant: under the revised version of Key to NYC, business owners must keep vaccination records for their employees but do not need to regularly "divert" employees to check the vaccination status of patrons and visitors, and there is no claim that any employees who refuse to provide proof of vaccination are irreplaceable or central to the financial success of plaintiffs' businesses. *Cf. Dixon*, 2021 WL 4750187, at *12 (finding that plaintiffs challenging Key to NYC had not "shown that direct economic damage [wa]s unavoidable" because they could "still conduct modified versions of their businesses"); *see also Kabrovski v. City of Rochester*, 149 F. Supp. 3d 413, 425 (W.D.N.Y. 2015) ("It is well settled that a 'taking' does not occur merely because a property owner is prevented from making the most financially beneficial use of a property." (citation omitted)). Moreover, the possible "boost" that this first factor provides plaintiffs is "dampened by the lack of specificity with which they plead financial harm." *Lebanon Valley*, 478 F. Supp. 3d at 401.

15

For similar reasons, the second *Penn Central* factor provides at most minimal support for plaintiffs. While the complaint is "devoid" of any allegation that Key to NYC has interfered with plaintiffs' investment-backed expectations, it may be "reasonable to assume" that plaintiffs invested in their businesses not expecting that they would eventually be subject to a program like Key to NYC. *Id.* Even if I make this assumption, however, the remaining plaintiffs operate and work with entities—including dining establishments, beverage distributors, and gyms—that "are ordinarily subject to a panoply of health-related regulations," *Everest Foods Inc. v. Cuomo*, 21-CV-6316 (AKH), 2022 WL 355553, at *11 (S.D.N.Y. Feb. 7, 2022); *see also Amato v. Elicker*, 534 F. Supp. 3d 196, 214 (D. Conn. 2021) (observing, in rejecting the plaintiffs' Takings Clause challenge to COVID regulations, that "restaurants are [already] highly regulated by the state"). I therefore "find it implausible that the institution of new regulations"—and especially regulations, like the remaining provisions of Key to NYC, that mainly amount to record-keeping requirements for workers—"would come as a surprise, or that such changes would so substantially interfere with any expectations [plaintiffs] may have had, as to require compensation." *Everest Foods*, 2022 WL 355553, at *11; *see also Dixon*, 2021 WL 4750187, at *12 (finding that, because business owners affected by Key to NYC could "still conduct modified versions of their businesses," they had not shown that "their investment-backed expectations [we]re unrecoverable"); *Lebanon Valley*, 478 F. Supp. 3d at 401–02 ("[F]luctuations in profitability under a new regulation do not establish a regulatory taking, provided that the state's action does not destroy the marketability of the regulated property." (internal citation and quotation marks omitted)).

Against these two factors, the third factor—which a number of courts in this circuit have considered "most important[]" in their analysis of claims like plaintiffs', *Everest Foods*, 2022 WL 355553, at *12; *Bimber's Delwood, Inc. v. James*, 496 F. Supp. 3d 760, 784 (W.D.N.Y. 2020);

*Amato*, 534 F. Supp. 3d at 214; *see also Lebanon Valley*, 478 F. Supp. 3d at 402 (noting this factor's "power to outweigh the other two")—weighs strongly against finding a Takings Clause violation. Key to NYC is a temporary program and does "not preclude all economic use of [p]laintiffs' property"; is "a negative restriction" on their property use, "rather than an affirmative exploitation by the state"; and is not a physical invasion or permanent appropriation of any of plaintiffs' assets. *Luke's Catering Serv., LLC v. Cuomo*, 485 F. Supp. 3d 369, 386 (W.D.N.Y. 2020) (citations and quotation marks omitted); *see also Our Wicked Lady LLC v. Cuomo*, 21-CV-165 (DLC), 2021 WL 915033, at *6 (S.D.N.Y. Mar. 9, 2021). These features are uncharacteristic of a regulatory taking, *see id.*, as is the fact that any "interference" with plaintiffs' property "arises from [a] public program adjusting the benefits and burdens of economic life to promote the common good," *Penn Cent.*, 438 U.S. at 124 (citation omitted)—in this case, reducing the transmission of COVID-19. Numerous courts in this circuit have come to the same conclusion, finding that the third *Penn Central* factor weighed in favor of state actors who were sued after enacting temporary restrictions on businesses in response to the COVID-19 pandemic. *See Dixon*, 2021 WL 4570187, at *12 (rejecting a challenge to Key to NYC); *Amato*, 534 F. Supp. 3d at 213–15; *Luke's Catering*, 485 F. Supp. 3d at 386–87; *Bimber's*, 496 F. Supp. 3d at 784–85; *Everest Foods*, 2022 WL 355553, at *12; *Lebanon Valley*, 478 F. Supp. 3d at 402; *Our Wicked Lady*, 22021 WL 915033, at *6. I join them and find that the third *Penn Central* factor does not support plaintiffs' Takings Clause claim.

Considering all three *Penn Central* factors, I conclude that the remaining plaintiffs have failed to state a claim for a regulatory taking. I therefore dismiss their Fifth Amendment cause of action pursuant to Rule 12(b)(6).

## CONCLUSION

Based on the foregoing analysis, I dismiss plaintiffs' First Amendment, Fourth Amendment, Fourteenth Amendment, and Supremacy Clause claims without prejudice and dismiss their Fifth Amendment claim with prejudice. The Clerk of Court is directed to enter judgment accordingly and close the case.

SO ORDERED.

                                                                                                     /s/
                                                                           Allyne R. Ross
                                                                           United States District Judge

Dated:        May 13, 2022
               Brooklyn, New York